## Wieman *versus* Anderson and Wife.

*Construction of Married Women's Act: Wife may trade with Merchandise acquired in her own right.*

1. Where a married woman is the owner of a store of goods in her own right she may trade with them, and with the proceeds of sales buy other goods to be held and traded with, exempt from seizure for her husband's debts, though she may not be a *feme sole* trader.

2. Her ownership, use, and enjoyment, under the Act of April 11th 1848, must be consistent with the nature and kind of the property acquired under it: and it being in the nature of merchandise to be sold and exchanged, the Act of 1848, where it authorizes married women "to own, use, and enjoy" merchandise as their separate property, legalizes trade by them with it.

3. The goods of a debtor were bought at sheriff's sale by a brother of the debtor's wife, who afterwards gave them to her; she then went into business in her own name, sold out her stock, and with the proceeds purchased other goods, which were levied on by a creditor of her husband's. On a feigned issue to determine the title, it was *Held*,

That the sale, and gift being valid, she had the power under the Act of 1848, to sell the goods given her, and invest the proceeds in other goods which she could hold for the purposes of sale and trade, beyond the reach of her husband's creditors.

ERROR to the District Court of *Philadelphia.*

This was an issue under the Sheriff's Interpleader Act, in which Joseph Anderson and Emma his wife, in right of said

[Wieman *v.* Anderson and Wife.]

Emma, were plaintiffs, and John H. Wieman defendant, to ascertain the ownership of certain goods which were claimed by said Emma, but which had been levied on as the property of Joseph Anderson, at the suit of said Wieman.

The case was this:—In July 1857, John H. Wieman, sold to Joseph Anderson, a grocer, doing business at 118 South Second street, Philadelphia, a bill of segars amounting to $436, for which, in December 1857, he gave his promissory note. On the 20th February 1858, judgment was obtained on said note; upon which a *fieri facias* was issued 16th November 1859, and the levy in question was made on the stock of goods in said store.

On the 24th December 1857, Joseph Anderson had confessed a judgment to Henry Neill for $1150, and on the same day a *fi. fa.* was issued thereon to December Term 1857, No. 807, D. C., on which the stock of goods then in said store were, on the 7th January 1858, sold by the sheriff to the said Henry Neill for $968.40. Mr. Neill, who was the brother of Emma Anderson, wife of said Joseph, testified that, after the sale to him, he presented the stock he had bought to his sister. The name of E. Anderson was put up after this alleged gift of the stock, and the business went on in the same store, both husband and wife attending thereto; most of the purchases, but not all, were afterwards made in the name of the wife; the husband continuing to attend the store, made sales, and received moneys. At the time the levy was made under Wieman's execution, the goods in the store had been mostly, if not entirely changed; as the goods were sold, other merchandise was bought with the proceeds, or upon credit. No witness for the claimant could testify that any part of the stock said to be given to Mrs. Anderson by her brother remained in the store when the levy was made by plaintiff. Nor was any attempt made upon the trial to identify any specific portion of the stock levied on, or to show from whom all or any part of it was obtained. Some of the goods in the store, purchased upon credit of the witnesses examined, were unpaid for at the time of the trial in the court below.

On the trial, the defendant requested the court to charge the jury,

1. That Emma Anderson, not being a *feme sole* trader, either under the Act of 1718, or the Act of 1855, could not carry on and transact business as a grocer, except as the agent of her husband.

2. That where personal property, levied on by creditors of her husband, is claimed by a married woman as hers, she must show by evidence which does not admit of a reasonable doubt, either that she owned the specific property levied on before her marriage, or that she acquired it afterwards by gift or bequest, or by purchase with funds which were not furnished by her hus-

[Wieman *v.* Anderson and Wife.]

band; and this rigid proof is always to be required, and in the absence of such proof, the property is presumed to belong to the husband.

3. That an arrangement between husband and wife to purchase goods on her credit, and pay for them out of the proceeds, transacting the business in her name, will not protect the goods from his creditors.

4. The joint earnings of husband and wife, and also the earnings and savings of the wife during coverture, belong to the husband; and even though the goods in the store of the claimants had been originally purchased with the funds of the wife, or given to her, yet all the goods purchased afterwards from the profits of the business carried on in the name of the wife, would belong to the husband.

5. That if a loan of money or goods be made to a married woman, or goods be sold to her on credit to enable her and her husband to carry on business, and they with capital so furnished engage in business in her name, the indebtedness for the capital becomes that of the husband, and the goods so held are liable to levy at the suit of his creditors.

6. That upon all the evidence in the cause, the verdict of the jury should be for the defendant.

The plaintiff also presented the following point:—

If the jury believe that the goods levied on are the same which were purchased by Henry Neill, the plaintiff's brother, at sheriff's sale, and by him given to her, or have been purchased by her with money realized from the sale of those goods so given her by her brother, the verdict should be for the plaintiff.

The learned judge before whom the case was tried, after stating the case, charged as follows:—

"If you believe the evidence, the capital of this store was plaintiff's brother's; he bought the goods, and presented them to his sister. She went into possession, traded on them, and bought others in their place.

"The question is, whether the goods purchased with the proceeds of the sale of those given her by her brother are liable for her husband's debts. I am of the opinion that they are not. There is no question that if these were the original goods, they would not have been subject to levy.

"But if the goods were changed, it is contended that the subsequent goods became the property of the husband, and liable to the executions of his creditors. I am not of that opinion. The wife has the right to use moneys given to her as she sees proper. She might invest it in a mortgage, and devote her time to collecting and reinvesting it, and this no one would pretend to deny.

"When a married woman has money or property given to her,

or left her by will, it is not the property of the husband, and she has the right to use and enjoy it as any other person might. I think she may go into business, and trade upon it.

"The fact of her husband being in the store and assisting her, does not alter the case.

"If the trading in her name is a mere cover, and the property is really his, then you should find for the defendant.

"It is for the jury to say whether the transaction in regard to the transfer to the wife was *bonâ fide*—and if you so find, your verdict should be for the plaintiff."

The points presented by the counsel were thus disposed of:—

The first point of defendant was negatived.

The second and third points affirmed.

The fourth point was declined, but the court held "that the earnings of the husband and wife, and also the earnings of the wife during coverture, belong to the husband. But the savings from the business, if the goods belonged to the wife, are hers, and the husband cannot touch them."

The fifth point was affirmed, and

The sixth point was negatived.

The plaintiff's point was affirmed, provided the jury believed the transaction was *bonâ fide*.

Under these instructions there was a verdict and judgment in favour of the plaintiff; whereupon the defendant sued out this writ, and averred here,

1. That the learned judge erred in declining to charge as requested in the defendant's first point.

2. In declining to charge as requested in defendant's fourth point, and in instructing the jury that the savings of the business, carried on with goods belonging to the wife, are hers, and that the fact of the husband's being in the store and assisting therein, makes no difference.

3. In declining to charge as requested in defendant's sixth point.

4. In affirming the point presented by the plaintiff below.

*John B. Gest*, for plaintiff in error.—1. No evidence was offered to show, nor was it pretended, that Emma Anderson was a *feme sole* trader within the provisions of the Acts of 1718 or 1855. And in 1843 it was decided that there was no *feme sole* trading in Pennsylvania, but such as is licensed and regulated by the Act of 1718; and that neither husband or wife are liable on the contracts of the wife, unless for necessaries: Jacobs *v*. Featherstone, 6 W. & S. 346.

Whilst the marriage relation exists, the wife has no power to contract debts, except as the husband's agent. They are his

[Wieman v. Anderson and Wife.]

debts, not hers. Marriage places her *sub potestate vire:* her power to contract is suspended during coverture : Heugh v. Jones, 8 Casey 433; Williams v. Coward, 1 Grant's Cases 21; Pettit v. Fretz's Executors, 9 Casey 118; Bear's Administrator v. Bear, Id. 525; Robinson v. Wallace, 18 Leg. Int. 188.

2. The distinction between earnings and savings, suggested by the court below, whereby the one is made the property of the husband, and the other is secured to the wife, in its relation to this case is not perceived. Why should the profits of a mercantile or storekeeping business carried on by a wife, which involves both manual and mental labour, and the occupation of time and energy, whether with or without the employment of capital, enure entirely for the benefit of the wife, while the proceeds of the labour of her hands go altogether to her husband?

It is submitted that as the goods levied upon were derived from the profits of the business, or else were purchased upon credit, they were the product of the joint labour, management, and credit of both, and that even though the wife alone had attended to the business, that the earnings thereof would belong to the husband and be liable for his debts.

The husband is entitled to the person and labour of the wife, and the benefits of her industry, skill, and economy; and the moneys derived therefrom are, in the eye of the law, the property of the husband: Raybold v. Raybold, 8 Harris 308; Hallowell v. Horter, 11 Casey 375; Robinson v. Wallace, 18 Leg. Int. 188; Walker v. Reamy, 12 Casey 410; Rhoads v. Gordon, 2 Wright 277.

The 3d and 4th specifications of error may be considered together.

The charge of the learned judge amounted in effect to a direction to find for the plaintiff. It is submitted that the plaintiff entirely failed to make out her case, and that the direction to the jury should have been under the evidence to find for the defendant.

Where personal property is claimed by a married woman, she must prove her title by evidence which does not admit of a reasonable doubt, either that she owned it before marriage, or else acquired it afterwards by gift, bequest, or purchase; and in case of a purchase after marriage, the burden is upon her to prove distinctly that she paid for it with funds which were not furnished by her husband, and of this rigid proof is always required: Gamber v. Gamber, 6 Harris 363; Bradford's Appeal, 5 Casey 513; Hoar v. Axe, 10 Harris 381; Walker v. Reamy, 12 Casey 410; Keeney v. Good, 9 Harris 349; Topley v. Topley's Administrators, 7 Casey 328; Winter v. Walter, 1 Wright 155.

The only evidence given by the plaintiff to show her title was: —1st. By H. Neill, that in January 1858 he gave his sister

[*Wieman v. Anderson and Wife.*]

goods amounting to $790. 2d. By four witnesses, that they since then sold her goods to a large amount on credit, some of which were not yet paid for. And 3d. That she had since then paid rent for the store, and .that her name was used in the business.

For aught that appears, a hundred others may have sold goods to her or her husband, or both. That any portion of the goods levied on were the same as were alleged to be given her or sold her by these four witnesses, was not in any way attempted to be shown. This is not the "full and clear proof" which the authorities insist a wife must give of her title to personal property before she can claim it as against her husband's creditors.

The verdict should have been for the defendant, because:— 1st. The plaintiff did not prove property in any one article levied on. 2d. Because she is not a *feme sole* trader, and cannot carry on merchandising except as her husband's agent. 3d. Because the goods levied on were derived from the earnings of the husband and wife and the profits of the business, or were sold to her upon credit while carrying on the business aforesaid.

*Amos Briggs*, for defendants in error.—The intention of the legislature, as interpreted by this court (Pettit *v.* Fretz's Executors, 9 Casey 118, Bear's Administrator *v.* Bear, Id. 525), in passing the Act 11th of April 1848, was to protect the property of a married woman against her husband's creditors. The position of the plaintiff here is just the reverse—to take her property to pay her husband's debts—debts that she had no hand in contracting, and which she is not even bound in morals to pay. None of the cases cited by the plaintiff sustain his position. In Raybold *v.* Raybold, the question was whether the earnings and savings of the wife during coverture were protected to the wife by the Act of 1848. This court determined that they were not.

In Hallowell *v.* Horter, the question was essentially different from the one now before you. Mrs. H. was not prosecuting the business with her own property. She, in conjunction with her husband, gave her labour in the business. A married woman's property, not her labour, skill, and industry, is protected. In that case the husband managed the business. In this one the husband was dissipated, and contributed no support to the family. Mrs. Anderson's brother gave her the property to enable her, by trading with it, to maintain herself and children.

The goods were hers to keep, to sell, or to trade. Had she kept them intact, they would undoubtedly be secure from her husband's creditors.

.. The simple fact of selling them and purchasing other goods in-

[Wieman *v.* Anderson and Wife.]

their stead with the money realized from their sale, certainly did not make those so purchased less hers than were the originals. If the money was hers, she had as full power to invest it in these goods as she had to invest it upon mortgage. To hold otherwise, would be to maintain that property once vesting in a married woman shall remain in *statu quo*. That she shall not manage or use it so as to make it productive, except at the risk of making it liable to execution by her husband's creditors.

The opinion of the court was delivered, April 21st 1862, by WOODWARD, J.—The proof was clear to the last degree, that the stock of goods in Anderson's grocery in January 1858, became the separate property of his wife. They were sold at sheriff's sale to Henry Neill, the brother of Mrs. Anderson, and by him presented to her. The judgment on which the sale took place was confessed by Anderson to Neill, but it was not impeached, or even questioned for fraud. The money bid for the goods, some $800, did not reach Neill's writ, and was consequently paid by him to prior lien-creditors. Thus he became the absolute owner of the goods, and he swears, "I gave all the goods to Mrs. Anderson, my sister." The jury found the sale and gift to be fair and valid transactions, and thus her title was established.

Had the plaintiff's execution against the husband been levied on *those goods*, it is apparent he must have been restrained from selling them, for they had "accrued" to a married woman, within the meaning of the Act of 11th April 1848, and therefore were not "subject to levy and execution for the debts or liabilities of the husband."

But the goods were sold and others purchased in the name of the wife, so that on the 16th November 1859, when the plaintiff levied his *fieri facias*, few, if any, articles of the original goods remained. It is most probable that the stock levied upon by the plaintiff in November 1859, was an entirely separate and distinct stock from that purchased by Neill and given to his sister, in January 1858, though a stock purchased with the proceeds of the former stock. Under the defendant's first and fourth points and the plaintiff's one point, the question was fairly raised, whether a married woman, not a *feme sole* trader, having a store of goods in her own right, can trade with them, and with the proceeds of sales buy other goods to be held and traded with, exempt from seizure for her husband's debts? The statute declares that property which accrues to a married woman shall be "owned, used, and enjoyed" by her as her separate property. The use and enjoyment here referred to must be such as are consistent with the nature and kind of property. A store of liquors and segars cannot be used and enjoyed in the same manner as

[Wiéman *v.* Anderson and Wife.]

household furniture or a dwelling-house.   They are merchandise, and it is the nature of merchandise to be sold and exchanged. When, therefore, the statute authorizes married women to own, use, and enjoy *merchandise* as their separate property, it legalizes trade by them.   It makes them merchants.

This is a fair deduction from the words of the statute, and it is unembarrassed by the accidents, which sometimes attend this class of cases, of the husband's joint possession, assistance, and co-operation in carrying on the business.   For though there was evidence of this husband's assisting his wife in a few instances, the essential proofs were that she carried on the business in her own name; that she purchased the goods, and when credit was obtained it was given to her; and that she paid the rent for the store building.   He was described as an intemperate man, seen in the store in few instances, but not much about it after the early part of the year 1859.   But what strips the question of all accidents, and reduces it to its simplest form, is the instruction that if the jury believe the trading in her name was a mere cover, and that the property was really the husband's, they should find for the defendant.   A verdict for the plaintiff under such instructions establishes that the trade she was carrying on was honestly her own trade, and not a cover for that of her husband.   The only question that can engage our attention upon such a record, is the one I have stated, whether a married woman with a store of goods given her may sell and invest the proceeds in other goods, and hold them beyond the reach of her husband's creditors. And that she may, seems to result as a logical deduction from the terms of the statute above stated.   If the statute is to have effect, we must answer this question as the court below answered it, in the affirmative.

But it is argued that the question cannot be so answered under the construction we have given to the statute in numerous cases. I have gone over the cases referred to (and all that are material were cited by counsel), and they are all distinguishable from this case.   A rapid review of them in their order of date will prove this.   Gamber *v.* Gamber, 6 Harris 363.   This was an action of· replevin by a widow against the administrator of her deceased and insolvent husband, to recover a one-horse carriage, which she claimed to have ordered and to have furnished the money to pay for.   Three points were ruled:—1st. That the husband's declarations were not evidence for the wife; 2d. That where a married woman sets up a claim to property as against her husband's creditors, she is held to rigid proof of title under the Act of 1848; and 3d. That if she proves her title, it is not necessary for her to show that she had exclusive possession of the property whilst living with her husband.

I need not pause to remark how entirely destitute that case

[Wieman v. Anderson and Wife.]

was of the mercantile features which constitute the case now in hand, but it is worth while to observe that community of possession between husband and wife was held not to impair a title in the wife otherwise valid.

Raybold v. Raybold, 8 Harris 308, was an attempt to raise a resulting trust in favour of a wife in real estate, from her alleged ownership of the purchase-money. To establish her ownership of the money, testimony was given that she had saved money given her from time to time by her husband for housekeeping purposes, and that she had received money from boarders. We did not consider money so accumulated the separate property of the wife, but held that the husband was entitled to the benefit of her industry and savings during coverture. Counsel attempt to apply this ruling to the case before us. It cannot be fairly done. Mrs. Raybold was not a merchant, making profit out of goods which were her exclusive property, but simply a housekeeping wife, accumulating a fund by savings out of the family purse which the husband replenished. She was not using and enjoying separate property of her own, and so acquiring the means that were in question, but she was serving her husband in the condition and circumstances in which he had placed her. Her earnings and savings were his and not hers. It would be a gross mistake to apply the reasonings of such a case to the case of a married woman dealing with merchandise to which her title was unquestionable.

Keeny v. Good, 9 Harris 349, reaffirmed with emphasis the doctrine of Gamber v. Gamber, that a purchase by a wife amounts to nothing unless it be accompanied by clear and full proof that she paid with her own separate funds; but it is entirely irrelevant to the case now under our consideration.

Hoar v. Axe, 10 Harris 381, is a repetition of the doctrine of other cases with no features that liken it to our case. The same observation applies to Bradford's Appeal, 5 Casey 513, and to Topley v. Topley, 7 Id. 328; to Heugh v. Jones, 8 Id. 433, Pettit v. Fretz's Administrators, 9 Id. 118, and Bear v. Bear, Id. 525. The case of Hallowell v. Horter, 11 Casey 375, was a mercantile case, but altogether unlike that now in hand. The wife showed no title to the goods levied, except as she claimed to have furnished the money that purchased them. But that money was loaned to her by the husband's father, and as his only remedy for the loan would be against the husband and not the wife, we held that the money loaned had not " accrued" to her within the meaning of the statute, and had not become her separate property. What broadly distinguishes that case from the present is, that here the wife's separate estate in the goods traded with is clearly established.

Walker v. Reamy, 12 Casey 410, was, like Raybold v. Raybold,

[Wieman *v.* Anderson and Wife.]

a contest about the ownership of money invested in real estate, and the wife failed for want of proof of exclusive title to the money. To this category belong also the cases of Winter & Hartman *v.* Walter, 1 Wright 155, and of Rhoads *v.* Gordon, 2 Id. 280, as well as the case of Auble *v.* Mason, 11 Casey 262, referred to and approved in Rhoads *v.* Gordon.

Thus it is manifest that the only case having relation to that peculiar form of property which we denominate merchandise, is Hallowell *v.* Horter, which is distinguishable, as above shown, from our case, in a most essential and fundamental fact.

We stand by all of these cases. We have no reason to qualify or doubt any of them. Our object has been to give such construction to the Married Woman's Act as would effectuate the intention of the legislature, without making the sacred relation of husband and wife a cloak for all manner of frauds. We require a woman who carries on business in her own name to furnish evidence in the highest degree satisfactory that she is the *bonâ fide* owner, in her own right, of the property traded with; but when she has done so, as Mrs. Anderson has done in this instance, it affords us pleasure to give her the protection of the statute.

The judgment is affirmed.